Cecil E. Lucas v. Commissioner.
Lucas v. Commissioner
Docket No. 7610.
United States Tax Court
1947 Tax Ct. Memo LEXIS 136; 6 T.C.M. (CCH) 870; T.C.M. (RIA) 47208; July 22, 1947
*136 Robert H. Tew, Esq., 610 Union Tr. Bldg., Rochester, N. Y., for the petitioner. E. C. Algire, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The respondent has determined a deficiency of $12,917.27 in petitioner's income tax for 1941. The sole issue is whether the petitioner is taxable on the gain on the sale of certain machine tools which he allegedly transferred to his wife as a gift just prior to their sale. Findings of Fact The petitioner is a resident of Rochester, New York. He filed his income tax return for 1941 with the collector of internal revenue for the 28th collection district of New York. During 1941 the petitioner conducted a business of manufacturing screw products at Rochester under the name of Lucas Screw Products Company, Inc. He had operated the business as a sole proprietorship since 1931. For some time prior to 1941 the petitioner had been manufacturing certain articles for war uses. Early in that year he learned through representatives of the United States Government that he would soon be required to convert his entire plant to war production. He was also told that he would be required to move his business *137 to a different location where it could be better protected. At that time the petitioner had on hand a number of conventional screw manufacturing machines which were known to be unsuited to the type of war production in which he was to engage. He had several conferences with his accountant about the conversion of his plant to war production and about what disposition should be made of these machines. He also talked over these matters with his wife. She had been active in the business for a number of years and at one time had done all of the office work. The petitioner was desirous of making some kind of security provision for his wife and their infant son before subjecting his entire business to the risks of war production. The machines which the petitioner had on hand were known to have a considerable ready market value. The petitioner had previously received an offer for the entire lot, 26 machines, from a dealer. He told his wife some time in August, 1941, that he would give the machines to her so that in case the new business venture should prove unsuccessful she would have something of her own. He showed her a diagram which he had prepared of the location of the machines in *138 his plant. There was an outstanding chattel mortgage on the machines at that time which the petitioner though wtould have to be satisfied before the gift could be completed. This mortgage was paid off a short time later with money which the petitioner borrowed for that purpose. The petitioner did not at any time give his wife any bill of sale or other written evidence of the alleged gift. For the purpose of the company's records the petitioner's bookkeeper prepared an invoice dated October 1, 1941, showing the transfer to Mrs. Lucas of 26 machines. The invoice was posted in the books about the end of October when they were closed for that month. When the petitioner told his wife that the machines would be given to her she gave her consent for them to remain in the plant until she could arrange for their sale. She also gave her consent for the petitioner to continue the use of them in the interim. About 18 or 20 of the machines were then being used by the petitioner in his business. On the morning of October 2, 1941, the agent who had previously made the petitioner an offer for the machines returned to the petitioner's plant with another dealer's representative and they told *139 the petitioner that they were ready to make Mrs. Lucas an offer of $30,000 for the 26 machines. The petitioner said that he would submit the offer to Mrs. Lucas and would let them know of her decision. The petitioner went home for lunch and talked the matter over with his wife. She asked his advice about it and he advised her to sell at that price. Later that day the sale was closed at the petitioner's office, with Mrs. Lucas present. A sales agreement was executed covering the 26 machines in question and the purchaser gave a check for $5,000 made out to Mrs. Lucas. The balance of the sale price was to be paid as the machines were removed from the petitioner's plant. The purchaser was to advise Mrs. Lucas when he wanted them shipped. The last of the machines was shipped on December 3, 1941. Some of them were used by the petitioner until their removal from the plant. The payments on the sale price were made according to the sales agreement by checks made out to Mrs. Lucas. She deposited all of the checks in her personal bank account. The account shows deposits in 1941 of $5,000 on October 3, $10,000 on November 18, $15,000 on November 27, and $750 on December 8. Mrs. Lucas used some *140 of those funds to purchase a parcel of real estate as a new site for the petitioner's plant. She leased this property to the company for a monthly rental. She also furnished the funds for remodeling the property and received promissory notes from the company. All but one of such notes, in the amount of $2,000, have since been paid. Prior to 1941 the petitioner and his wife filed joint income tax returns. The wife had no separate income. For the year 1941 the wife filed a separate return showing gross income of $18,497.65. Of that amount $585 represented compensation for services and $17,912.65 gain on the above described sale of the screw manufacturing machines. The parties have stipulated that $17,912.65 is the correct amount of the gain on the sale. In his separate return for 1941 the petitioner reported a gross profit from the business of $34,180.54 and a net income of $33,553.41. He reported no profit on the sale of the machines in question. The petitioner filed a gift tax return on December 2, 1942, in which he reported a gift to his wife of 26 machine tools of a value of $12,087.35. The return showed no tax due. In his deficiency notice herein the respondent included *141 the $17,912.65 gain reported by the petitioner's wife on the sale of the machines in question in the petitioner's return. He also made an adjustment in the closing inventory of $4,693.93. These adjustments resulted in the deficiency asserted for 1941. The petitioner did not make a completed gift of the machine tools in question to his wife in 1941. The petitioner's attempt to make a gift of said machine tools to his wife just prior to the sale thereof was for the purpose of avoiding tax on the gain on the sale, and lacked reality. The petitioner intended to make his wife a gift not of the machines but of the proceeds from the sale of the machines. Opinion LEMIRE, Judge: Among the essential elements of a valid gift are "* * * (3) a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject matter of the gift, in praesenti; (4) the irrevocable transfer of the present legal title and of the dominion and control of the entire gift to the donee, so that the donor can exercise no further act of dominion or control over it; (5) a delivery by the donor to the donee of the subject of the *142 gift or of the most effectual means of commanding the dominion of it; * * *. [Adolph Weil, 31 B.T.A. 899, affirmed, 82 Fed. (2d) 561, certiorari denied, 299 U.S. 552.]" The petitioner never intended to give up the possession or control of the machines at the time of the alleged gift. He knew at that time that the machines in all probability would be sold in a short time and he intended for them to remain installed in his plant and subject to his use until that time. There was never any delivery of the machines to Mrs. Lucas. While it would have been impracticable for the petitioner to have made an actual delivery of the machines he could have given her a bill of sale or some other writing as a symbol of delivery. This he did not do. His bookkeeper prepared an "invoice" showing the transfer of the machines from the petitioner to his wife but this was for bookkeeping purposes only. It was not delivered to her, or intended to be. The wife had nothing to show that she had any interest in the machines until the purchaser gave her a check as payment on the sale price. She had no "effectual means of commanding the dominion" over the subject matter *143 of the gift. Adolph Weil, supra. The sale of the machines was arranged and consummated by the petitioner. His wife merely lent her name to the transaction. There can be no doubt that the petitioner's principal purpose in undertaking the gift of the machines was to avoid the tax on their sale. His accountant testified in this proceeding that the petitioner instructed him to determine what was the "proper procedure under the tax laws" to give the machines to his wife. The petitioner himself testified, on cross-examination by Government counsel, as follows: "Q. You had already talked to Mr. Doney [the agent] around September first, you say? "A. That is true, but there was no definite statement at that time that the machinery could be sold. "Q. I understand that. The fact of the matter is that if the machinery were sold you could have just as well protected your family by giving Mrs. Lucas the proceeds as giving her the machinery? "A. After the machinery was sold, I wouldn't have the proceeds. "Q. Why wouldn't you have the proceeds? "A. Because it would be taxable. "Q. In other words, your idea was to preserve the taxes on the transaction by giving your *144 wife the machinery before the sale so that she would be taxed on the proceeds rather than you? "A. Not necessarily. "Q. What did you mean then, there not being any proceeds available because of the taxes? "A. That is the problem of that time of being in the high bracket and that was my property. If I sold it, the proceeds from that sale would be very highly taxed. "Q. Your advisors told you that, did they not? "A. Absolutely." The facts here are like those in J. L. McInerney, 29 B.T.A. 1, affirmed, McInerney v. Commissioner, 82 Fed. (2d) 665. There the taxpayer undertook to transfer a one-half interest in certain real estate and personalty to his wife after having already negotiated for its sale but before the sale was consummated. We said in our opinion: "The transfers were a subterfuge, effected upon the eve of the consummation of the sale in the hope that it would serve to avoid a part of the tax to be imposed upon the profit derived therefrom. We conclude that the real owner and the vendor of the properties was petitioner, and that the entire profit is taxable to him. * * *" See also Howard Cook, 5 T.C. 908. Under the reasoning *145 of the cited cases the petitioner would not prevail here even if he had fully met the technical requirement for a delivery of the subject matter of the gift. His real intention was not to make a gift of the machines but to make a gift of the proceeds from the sale. The evidence, we think, fully supports the respondent's determination that the gain on the sale of the machines in question was taxable income to the petitioner. Decision will be entered for the respondent.