HOWARD COOK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5542.     Promulgated October 15, 1945.

*Ralph L. Alexander, Esq.*, for the petitioner.
*Roy C. Hornberg, Esq.*, for the respondent.

OPINION.

Van Fossan, *Judge*: The first issue here presented is whether or not the petitioner, on December 23, 1941, made gifts to each of his sons of 60 shares of the common stock of Midland. The respondent contends that the petitioner did not make gifts of the stock, but merely assigned to his sons the proceeds of liquidation of 120 shares of stock, and that the gain thereon is taxable to the petitioner. The petitioner

contends that he made valid gifts of stock to his sons and that the gain realized on the liquidation of the shares so given is taxable to the donees.

The facts have been set forth in detail in our findings and they need not be repeated here. The question arising from them is not so much whether gifts were made, but is rather a question of what was given. There can be little doubt that the petitioner went through some of the formalities of making a gift of stock to each of his sons. He wrote a letter to each, advising him that he was making such a gift; he endorsed his stock certificate, indicating the disposition of 120 of the 300 shares represented thereby; and he notified Shelton, Younger & Co. (apparently the transfer agent of Midland) of his actions. Since at the time herein involved the petitioner's sons were minors, it may well be questioned whether the formalities gone through by the petitioner were sufficient to effect delivery of the subject matter of the gifts to the donees. Cf. *Weil v. Commissioner*, 82 Fed. (2d) 561.

Regardless of that, however, upon a careful scrutiny of the whole record, looking to realities rather than formalities, it is our opinion that the petitioner intended to, and did, make gifts of a portion of the distributions in liquidation rather than bona fide gifts of stock to his sons. At the time the alleged gifts were made the corporation was in the process of dissolution and liquidation. The major portion of its assets had been sold prior to December 15, 1941, and the sale of the remainder had been authorized at the special stockholders' meeting held on that date. The petitioner was present at that meeting and voted in favor of the liquidation and dissolution of Midland. Consequently, he was well aware that the corporate activities had all but ceased except for the actual distribution in liquidation. He knew that the only possible benefits his sons could derive from the gifts would be to receive the amounts distributed in liquidation of those shares.

The petitioner contends, however, that at the time of the alleged gifts the liquidation of the corporation was not yet complete and that the resolution to liquidate could have been rescinded at the adjourned meeting held on December 29, 1941, and that the petitioner's sons could have voted their stock in favor of such rescission at that time. Viewed as a matter of corporate formalities, this contention may have merit, but we are concerned with actualities. The petitioner testified that two of his associates, who, with the petitioner, owned a majority of the stock, had been desirous that the corporation should be dissolved. At the meeeting on December 15 the stockholders voted unanimously for liquidation. By December 29 all the assets of Midland had been disposed of in accordance with the resolution passed

at the earlier meeting and no reason appears why such action should have been rescinded at the later meeting. It must be remembered further that the petitioner's sons did not vote the stock allegedly given them at the December 29 meeting. Those shares were voted by the petitioner as "proxy" for his two minor sons.

The petitioner well knew that nothing remained to be done except to have the actual proceeds of liquidation distributed among the shareholders. In his letter to Shelton, Younger & Co. advising them of the gifts to his sons, he directed that checks representing a liquidating dividend on 180 shares be distributed to him and that a check representing liquidating dividends on 60 shares be distributed to each of his sons. It was thus patently never his intention that his sons should exercise any ownership over the stock, but merely that they should participate in the proceeds of liquidation.

The case at bar is similar in many respects to that of *McInerney* v. *Commissioner*, 82 Fed. (2d) 665. There the taxpayer, by deed of gift, created an estate by the entirety in himself and his wife in certain realty which he had acquired for purposes of sale and which, in fact, they immediately thereafter sold. It was held that the transaction did not constitute a bona fide gift of one-half of the realty to the wife, but was a gift of an interest in the benefits, and that the taxpayer was not relieved of his tax liability on any part thereof. In its discussion the court said:

* * * Under the circumstances it appears that it was not the intention of the petitioner that his wife should have any real interest in this property. He had agreed to dispose of all of it long before, and his wife acted at every point in accordance with the agreement. A continuing intention existed to effect the sale, and the transfer to the wife was a mere incident.

A single transaction may not be broken up into various elements to avoid a tax. [Citations.] * * * The gift was a gift of an interest in the profits and does not relieve the petitioner of tax liability. * * *

Viewing the situation as a whole, it is our opinion that a similar conclusion must be reached in the instant case. We therefore hold that the petitioner made a gift, not of stock, but of the proceeds of liquidation and that he is properly taxable on the gain arising therefrom. Cf. *Doyle* v. *Commissioner*, 147 Fed. (2d) 769.

The next and final issue concerns the market value of the notes received by the petitioner. The facts show that the petitioner received as a part of his distributable share notes of Mid-State Printing Co. in the face amount of $45,000, together with accrued interest thereon in the amount of $450. The petitioner was unsatisfied with the original form of the notes because they did not express the time at which the interest was payable. He felt that no bank would discount such notes or hold them as collateral. Therefore, within 60 days after the receipt of the original notes, at the petitioners' insistence, new notes were is-

sued with the same signatures and in the same manner as the original notes, but in a different form. The petitioner forgave the interest which had accrued from the date of the original notes to the date of their reissue. From this the petitioner contends that the notes he received on December 29, 1941, were worth no more than their face amount and that the accrued interest should not be considered a part of their value.

We do not agree. The only evidence that the value of the notes was less than the amount determined by the respondent is the petitioner's statement that he did not believe they would be acceptable to any bank. He does not contend that the notes were worth less than their principal amount, but contends he should not be charged with the accrued interest received as a part of the distribution in liquidation. There is no evidence, however, that the interest was uncollectible. In fact, it appears that the accrued interest was of value at the time of its receipt, since the petitioner testified that he forgave such interest in consideration of the reissue of the notes in what he considered a more marketable form.

The petitioner has not proved that the notes or the interest accrued thereon had a lesser value than that determined by the respondent. Consequently, the respondent must be sustained.

*Decision will be entered for the respondent.*