**WINTON** v. **KELM** (two cases).

**JONES** v. **KELM.**

Civ. Nos. 4176, 4177, 4178.

United States District Court
D. Minnesota, Fourth Division.
June 8, 1954.

Best, Flanagan, Rogers, Lewis & Simonet, Ward B. Lewis, and Salisbury Adams, Minneapolis, Minn., for plaintiffs.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Paul S. McMahon and Allen A. Bowden, Sp. Assts. to Atty. Gen., George E. MacKinnon, U. S. Atty., Washington, D. C., and Alex Dim, Asst. U. S. Atty., St. Paul, Minn., for defendant.

JOYCE, District Judge.

These three suits for tax refund involving identical issues were consolidated for trial.

The three plaintiff taxpayers are surviving children of Joel Winton and Mrs. Helen S. Winton who died in 1934 and 1947 respectively. In 1937 the children established a charitable trust designated as the Joel Foundation in memory of their father. On December 19, 1947 they established a similar trust, the Elizabeth Fund, in memory of their mother. Both trusts qualified for and received from the Treasury Department certificates of exemption from tax as charitable organizations under Section 101 of the Internal Revenue Code, 26 U.S.C.A. § 101.

Since the inception of the trusts the three cotrustees of each have been two of the present taxpayers, David J. Winton and Charles J. Winton, Jr., and Robert J. Flanagan. As to the Joel Foundation the Wintons had for a number of years followed the practice of making additional gifts of cash or stock, such gifts usually being made late in each calendar year.

On December 20, 1947 each of the Wintons as owners of certain shares of the capital stock of Winton-Oregon Timber Company, a Delaware corporation, purported to transfer to Robert J. Flanagan, one of the trustees and as nominee for the Joel Foundation, 200 shares, and to the same individual as nominee for the Elizabeth Fund 100 shares of such stock. The transfers were effected by assignment of the share certificates, transfer on the stock records of the corporation, and delivery of the certificates to Flanagan on the date mentioned. The practice of holding stock, for the sake of convenience, in the name of a nominee was authorized and permitted by the instruments under which the trusts were established.

Pursuant to a plan of liquidation the corporation paid final liquidating dividends to the trusts, or to Flanagan as their designated nominee, some time after December 23rd in 1947. The three taxpayers in their 1947 Federal income tax returns claimed as charitable deductions amounts equal to the value of the Winton-Oregon stock transferred and reported no gain upon the liquidation of such corporation. The taxpayers' returns were timely filed and the taxes there reported due were paid.

The Commissioner upon audit of the returns determined that the payments in liquidation were taxable to the Wintons at capital gain rates and made a deficiency assessment. The additional tax and interest was paid by each of the plaintiffs in the amount of $1,786.06 on March 28, 1952. Following payment, claims for refund of such amounts with interest were made and perfected and the present suits were timely commenced.

The sole issue, since the cost basis of the stock had already been recovered through prior tax-free distributions, is whether the admitted gain upon liquidation of the corporation was realized by and taxable to the Wintons or was realized by the charitable trusts and exempt from tax.

Winton-Oregon had been reorganized in 1925 under the laws of Delaware for

the purpose of holding certain timber lands in the State of Oregon for the purpose of sale. As of December 8, 1947 all of the lands had been sold or lost under tax foreclosure and the corporation's assets, except perhaps for certain redemption rights to tax-forfeited lands, consisted solely of cash. Accordingly on that date the Board of Directors adopted a resolution containing a plan of liquidation pursuant to section 39 of the Corporation Law of Delaware, 8 Del.C. § 275.

At that time the corporation had outstanding 5,000 shares of its capital stock held by thirty-one individual and fiduciary shareholders residing in seven states. The three plaintiff-taxpayers owned respectively 606.83, 655.72 and 447 shares, of which, as indicated, 300 shares each were the subject of the gifts here in question.

There is no question but that as of that time the Wintons were desirous of effecting a liquidation, and equally clear that they were not in a position to control the corporation's action. Under Section 39 of the Delaware Corporation Law two methods of corporate dissolution are provided: (1) the adoption of a plan by action of the Board of Directors followed by a meeting of shareholders upon three weeks published notice and a vote in favor of such plan by a two-thirds majority of stockholders there present; or (2) in lieu of such notice the written consent of one hundred per cent of the shareholders.

Since time was short and some if not all of the parties involved desired to complete the liquidation before the end of 1947, the Board of Directors solicited consents under the alternative method mentioned. As of December 20, 1947, the date of the stock transfers to the trust, consents covering 3,680.51 shares had been received. Two days thereafter consents were received with reference to the balance of the shares including that of Robert J. Flanagan as to the 900 shares standing in his name as nominee for the trusts.

At the stockholders' meeting of December 23, 1947 there was accordingly unanimous approval given to the plan of dissolution and liquidating dividends were paid thereafter in 1947.

The plaintiffs contend that they made complete and absolute transfers to the trusts and that the incidence of the tax upon the gain resulting from the subsequent corporate liquidation is properly upon the transferees and not upon them in accordance with the well established general principle of income tax law that the tax liability on income from property is a concomitant of ownership. Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465.

The defendant maintains that in substance and reality the subject of each transfer was merely a right to receive an appropriate portion of the corporate assets upon liquidation, and such was the exclusive expectancy of the recipients. While the Government concedes the effectiveness of the gifts to transfer such right it asserts such gifts were anticipatory assignments of income and ineffective to insulate the transferors from income tax liability, citing Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75.

It is of course well established by the Horst case and others of similar tenor which are discussed in Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898, that the Government and the courts in the application of the revenue laws must look to the substance and not the form of tax transactions. The dominant purpose of the revenue laws is the taxation of income to those who earn it or otherwise create the right to receive it. The transfer merely of a right to receive income prior to its actual receipt by the transferor will not insulate him from tax liability.

It is equally true that where income is the product of property and the taxpayer makes a complete and irrevocable transfer of such property, re-

taining no direct or collateral control over the receipt of its income, the incidence of the tax shifts to the transferee as to income subsequently earned or realized upon such asset. Blair v. Commissioner, supra.

While the defendant upon brief concedes the effectiveness of the transfers to pass rights to receipt of proceeds in liquidation, he questions the effectiveness of the gifts with reference to the stock itself claiming in substance a lack of intent to transfer such stock.

 The requisite elements of a valid gift of corporate stock are the subject of an exhaustive opinion in Apt v. Birmingham, D.C.N.D.Iowa, 89 F.Supp. 361. Intent on the part of the transferor to divest himself completely and irrevocably of all present and future dominion and control over the subject matter is one of the five, or possibly six, requirements of a valid gift.

The Government apparently concedes, as it must, the presence of all elements of a valid gift aside from intent.

The Government's basic claim, which involves incidentally the matter of intent, is that sufficient legal action had been taken prior to the gifts so that corporate liquidation was assured and the donees had no choice other than to receive the proceeds of liquidation and accordingly, viewed realistically, the donees received no stock. In this contention the Government relies upon four cases. Weil v. Commissioner, 5 Cir., 82 F.2d 561; McInerney v. Commissioner, 6 Cir., 82 F.2d 665; Howard Cook, 5 T.C. 908; Tatem Wofford, 5 T.C. 1152.

In the Weil case the taxpayer took certain stock certificates from his deposit box and without endorsing them placed two certificates in each of four envelopes bearing the names of his minor children, and retaining a memorandum of the certificate numbers, returned the envelopes to his box. He then directed his broker to sell the stock for his children. The gain on such sales was taxed to Weil. This case appears to be inapposite here because Weil was found never to have made effective delivery of the certificates and such finding generated a conclusion that the requisite intent to part with title was absent. In the present case there is no question of effectiveness of delivery and the basis for a conclusion as to absence of intent is accordingly lacking.

The McInerney case stands for the proposition that the use of a purely formal conduit of title does not affect the tax consequences of a transaction, there being no intent on the part of the transferor to vest title as a matter of substance in such conduit. The case does not appear to be particularly germane here where, at the least, there was clearly present an intent to vest in the donees whatever the donors had to give.

The Cook case is closest on its facts to those present here. In Cook the stockholders of the corporation on December 15, 1941 approved or authorized sale of all corporate assets and by resolution voted to dissolve the corporation prior to December 31, 1941. After such resolution but prior to completion of dissolution Cook on December 23, 1941 addressed letters to his two minor sons advising of a gift to them of a specified number of his shares and on the same day advised the corporation's transfer agent that his shares had been partially disposed of and that checks representing liquidating dividends with respect thereto should be issued to his two sons. The tax court indicated doubt that valid gifts of the certificates were made in any event but found independently that Cook's intent was to transfer not stock but proceeds of liquidation. This case is distinguishable for two reasons (1) the absence of delivery of the certificates was an important if not vital element in the case as indicated in Theodore D. Stern, 15 T.C. 521, and (2) the vote of stockholders for dissolution had occurred prior to the gift, if one was made, and as indicated in Apt v. Birmingham, supra, such vote may be a sufficient severance of the gain from the investment for federal income tax purposes.

Similarly in Tatem Wofford, 5 T.C. 1152, there was in effect prior to the claimed gift of stock a court decree which in substance directed dissolution.

Contrasted with the above cases are those relied upon by plaintiffs. Apt v. Birmingham, supra; Theodore D. Stern, supra; Davis B. Thornton, 5 T.C. 116, and Hardymon v. Glenn, D.C.W.D.Ky., 56 F.Supp. 269, among others.

Each of these cases involved the transfer of stock at a time when dissolution of the corporation was contemplated and a dissolution in fact followed within a few days. In each case the incidence of the tax on the gain was placed upon the transferee. It is unnecessary to discuss the facts of these cases in detail but it should be stated that in each the probability of dissolution at the time the stock was transferred was at least equivalent to that present here. Also the preliminary requirements short of an actual vote for dissolution by the stockholders had taken place. In the Apt case the resolution for that purpose had been drafted prior to the transfer.

Consideration of all the above cases indicates that the basic factor in all is whether or not there had been a severance of the gain in value of the stock prior to the transfer. If such has occurred it is taxable to the transferor although he thereafter purports to avoid it by assignment of the stock. If it occurs after transfer it is an incident of stock ownership and taxed to the transferee.

No doubt realization occurs upon the completion of dissolution. Since the substantial element in such dissolution is the stockholders' vote, the formalities following thereafter in order to complete dissolution may be ignored. Howard Cook, supra; see Apt v. Birmingham, supra, particularly in 89 F.Supp. at pages 392–393.

In the present case the transfers occurred prior to such vote. What had been done looking toward dissolution, such as the action by the Board of Directors providing for such vote by the shareholders and the solicitation of consents, was merely preliminary to such substantive action and comparable to preparation of the draft resolution in the Apt case.

It accordingly appears that in the present case there were valid and completed gifts of the stock prior to any realization and the gifts were not merely anticipatory gifts of income. The existence of the requisite intent to transfer is reinforced by the fact the present gifts were not isolated transactions but accorded with the consistent custom of the taxpayers in making gifts of securities and stock to these donees as the evidence demonstrates. The shortness of time intervening between the transfers and the actual dissolution of the corporation, so much relied upon by the defendant, is not controlling. This is clearly demonstrated by the cases cited above.

The Government also pointed out that at the time of transfer the tax basis of the stock for capital gain purposes was zero by reason of previous distributions by the corporation in the nature of return of capital so that all assets when and if distributed would constitute taxable income. However, the stock as a capital asset should not be confused with the assets of the corporation represented thereby. While the assets were cash and income in prospect, when distributed, to the total amount of the distribution, until some event occurred which in substance constituted a severance or realization such assets constituted merely an increment in the value of the stock which was not taxable income. Eisner v. Macomber, 252 U.S. 189, 207, 40 S.Ct. 189, 64 L.Ed. 521.

The fact the transfers were made to tax exempt charities is immaterial and the defendant does not suggest otherwise. Cf. Campbell v. Prothro, 5 Cir., 209 F.2d 331, 336.

Here the taxpayers made a complete and irrevocable gift of their stock and retained no control thereafter. The trusts as recipients of the stock could

vote for or against the dissolution as they pleased and no dissolution could then occur without unanimity among stockholders. While the trust deeds required a majority of the trustees to act with reference to the stock and two of the three trustees were also the donors such element does not indicate a retained control. In United States v. Morss, 1 Cir., 159 F.2d 142, 145, Judge Magruder stated:

> "The powers of management, extensive as they are, vest in the taxpayer only in his capacity as trustee, and for so long as he may remain a trustee. Upon familiar principles they will be construed to be fiduciary powers, which must be exercised in good faith for the best interests of the trusts and of the beneficiaries therein, rather than for the benefit or aggrandizement of the trustee personally."

Similarly the fact that all the trustees favored the dissolution is immaterial in view of the fact they had the clear legal right to oppose it if they so desired and to vote the stock accordingly. As said by Judge Miller in Hardymon v. Glenn, D.C.W.D.Ky., 56 F.Supp. 269, 275:

> "The gifts created rights in them which they could exercise or not, according to their own judgment and decision. There is a marked legal distinction between creating rights which you trust will not be exercised and creating no legal rights at all; a transaction of the first kind changes existing legal relations between the parties, while the other does not."

Accordingly there were no legal strings attached to the present gifts nor since these were not intra-family transfers are there grounds for finding those informal and collateral benefits to the transferor the presence of which were important in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. In C. I. R. v. Sunnen, 333 U.S. 591, 605, 68 S.Ct. 715, 723, 92 L.Ed. 898, the court stated with reference to the Clifford-Horst line of cases:

> "And it also recognizes that the fact that the parties are intimately related, causing the income to remain within the family group, may make the transfer give rise to informal and indirect benefits to the transferor so as to make it even more clear that it is just to tax him."

Each of the plaintiffs is entitled to recover in the amount indicated in their claim and appropriate proposed findings of fact, conclusions of law and order for judgment may be prepared and submitted.