335 F.Supp. 1401 (1971)
Edwin W. HUDSPETH and Maxine G. Hudspeth, Plaintiffs,
v.
UNITED STATES of America, Defendant.
No. 70 C 624(4).
United States District Court, E. D. Missouri, E. D.
December 20, 1971.
*1402 Charles H. Shaffar, Vatterott, Shaffar & Dolan, St. Ann, Mo., for plaintiffs.
Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., Fred B. Ugast, Acting Asst. Atty. Gen., Douglas G. Anderson, Michael C. Dureny, Trial Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

MEMORANDUM
WANGELIN, District Judge.
This action arises under the Internal Revenue Laws of the United States and is for refund of individual income taxes alleged to have been erroneously assessed and collected. The parties have submitted to the Court a Stipulation of Fact and Issue of Law which is hereby adopted as this Court's findings of fact.
Edwin W. and Maxine G. Hudspeth, plaintiffs herein, timely filed their joint individual income tax return for the year 1965. On audit of that return the Commissioner of Internal Revenue determined that an additional $10,613.00 in capital gain should have been included in the plaintiffs' 1965 taxable income, and timely assessed the additional income tax and interest due thereon as follows:

 Income tax $6,530.20
 Interest 469.99
 _________
 Total $7,000.19

On July 10, 1969, the above assessment was paid in full by plaintiffs.
On August 12, 1969, the plaintiffs timely filed a claim for refund (Form 843) with the Internal Revenue Service, contesting the inclusion of the capital gain in their taxable income and seeking to recover the $7,000.19 in tax and interest paid as a result of that adjustment. On May 28, 1970, the Internal Revenue Service formally disallowed plaintiffs' claim for refund. The instant suit was filed on December 10, 1970.
This Court has jurisdiction by virtue of 28 U.S.C. § 1346(a) (1).
On April 10, 1964, Maginn-Martin-Salisbury, Inc. (hereinafter referred to as MMS) a Missouri corporation whose principal officer was Edwin W. Hudspeth, plaintiff herein, was operating as a mortgage banking business in St. Louis, Missouri. The 1000 shares of capital stock of MMS was owned as follows:

 Edwin W. Hudspeth 815 shares
 (plaintiff)
 Edwin G. Hudspeth 142 shares
 (plaintiff's son)
 George C. Hudspeth 43 shares
 (plaintiff's son)
 Total 1000 shares
 ___________________________________

Pursuant to resolutions adopted and ratified at special meetings of the Directors and Shareholders of MMS on April 10, 1964, a plan of complete liquidation of MMS pursuant to Section 337 of the Internal Revenue Code of 1954 was adopted. On June 17, 1964, MMS entered into a contract with General Mortgage Company of St. Louis, a Missouri corporation (hereinafter referred to as General Mortgage), whereby MMS agreed to sell to General Mortgage its mortgage servicing contracts for the sum of $135,000.00.
*1403 On January 21, 1965, Edwin W. Hudspeth, plaintiff, made gifts to nine tax-exempt charitable or educational organizations of 67 shares of MMS stock.
Between February 10, 1965, and March 31, 1965, all the outstanding stock of MMS was surrendered to the corporation in exchange for its net assets of $328,892.33 in complete liquidation of the corporation. On March 12, 1965, MMS filed Articles of Dissolution with the State of Missouri, and on March 29, 1965, MMS filed Articles of Liquidation with the State of Missouri. On April 1, 1965, the Secretary of State of Missouri issued a Certificate of Dissolution to MMS, a copy of each of the documents is before the Court.
Plaintiff's (Edwin Hudspeth) basis in the 67 shares of stock given on January 21, 1965, to the charitable and educational organizations was $884.00. On their 1965 income tax return, the plaintiffs took a charitable deduction of $24,610.00 of which amount $22,110.00 represented the value which the plaintiffs assigned to the 67 shares of MMS stock given to the nine tax-exempt charitable and educational organizations on January 21, 1965. The amount of $22,110.00 also represents the amount of money received by the nine organizations from MMS upon their surrender to MMS of the 67 shares of stock.
All the outstanding stock of MMS was common stock. There was no preferred stock outstanding, and all the outstanding common stock was of the same class with equal rights. The 67 shares owned by the nine charitable and educational organizations were not sufficient, standing alone, to rescind the liquidation.
On the ground that the plaintiffs had made an anticipatory assignment of the proceeds on liquidation of MMS, the Commissioner of Internal Revenue determined that the gain on the 67 shares of donated stock should have been reported on the plaintiffs' 1965 income tax return. Accordingly, the Commissioner included an additional $10,613.00 in capital gain in plaintiffs' taxable income as follows:

 Liquidating Distributions $22,110.00
 Less basis in 67 shares 884.00
 ___________
 Gain on 67 shares 21,226.00
 Less Sec. 1202 deduction 10,613.00
 ___________
 Increase in capital gain 10,613.00

Under the law of the State of Missouri, the action of the directors and shareholders of MMS, on April 10, 1964, could have been reversed at any time prior to March 12, 1965, by the shareholders and directors of MMS holding another meeting and cancelling their action of April 10, 1964.
The plaintiffs had, consistently for a period of years prior to 1965, made donations to various eleemosynary organizations.
The sole issue of law in this action is whether corporate liquidating distributions attributable to stock which is donated to tax-exempt organizations after the plan of complete liquidation is adopted, but before the liquidating distributions are made, are includable in the donor's income.
The pertinent portions of the statutes involved are as follows:
Internal Revenue Code of 1954,
"§ 61. Gross income defined.

"(a) General Definition.Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, . . .." (26 U.S.C. § 61)
* * * * * *
"§ 331. Gain or loss to shareholders in corporate liquidations.

"(a) General Rule
"(1) Complete liquidations. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock.
(2) Partial liquidations. Amounts distributed in partial liquidation of a corporation (as defined in section 346) shall be treated as in part or full payment in exchange for the stock." (26 U.S.C. § 331)

*1404 * * * * * *
"§ 337. Gain or loss on sales or exchanges in connection with certain liquidations.

"(a) General Rule.If
"(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and
"(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,
then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period." (26 U.S.C. § 337)
The defendant contends that the donation of stock constituted an assignment of income, and therefore plaintiff must be taxed on such income as was received by the donees pursuant to the assignment. See, Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940).
Plaintiff relies primarily on the case of Winton v. Kelm, 122 F.Supp. 649, 651-652 (D.C.Minn.1954) wherein the court stated:
". . . where income in the product of property and the taxpayer makes a complete and irrevocable transfer of such property, retaining no direct or collateral control over the receipt of its income, the incidence of the tax shifts to the transferee as to income subsequently earned or realized upon such asset. Blair v. Commissioner of Internal Revenue [300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (1937)]."
Without discussing the broad generalizations submitted by the parties, the Court finds the question of primary importance to be as follows: If, under Missouri law, the plan of complete liquidation adopted in March, 1964, was irrevocable or irreversible, the stock donation in January, 1965, (before the liquidating distributions were made) was an assignment of income. If, on the other hand, the plan of complete liquidation adopted in March, 1964, was not the final decision to liquidate, and the final and irrevocable decision to liquidate was made after the donation, then there was no assignment of income. See, Jacobs v. United States, 280 F.Supp. 437 (S.D. Ohio 1966), aff'd 6 Cir., 390 F.2d 877; Winton v. Kelm, 122 F.Supp. 649 (D.C. Minn.1954).
Thus, in January 1965, if plaintiff was absolutely and indefeasibly entitled in the immediate future to the liquidating distributions on the stock donated by him, and the act of filing articles of dissolution on March 12, 1965, was a mere ministerial act which the 1964 plan of liquidation and Missouri law required plaintiff to perform, then plaintiff cannot prevail.
Section 351.465 sets forth the procedures by which a corporation may elect to dissolve voluntarily under Missouri law. In summary, the section provides that (1) the board of directors shall adopt a resolution that the corporation be dissolved voluntarily, (2) a meeting of the shareholders shall be called to vote on the resolution, (3) at least two-thirds of the shareholders must vote for the resolution, and (4) upon the adoption of the resolution, articles of dissolution shall be executed by the president (or vice-president) of the corporation. Thereafter, § 351.465 requires that the corporation comply with the provisions of §§ 351.470 to 351.480.
Section 351.470, subd. 2 provides that "upon the filing by the secretary of state of articles of dissolution, the corporation shall cease to carry on its business, except insofar as may be necessary for the proper winding up thereof. . . ."
Effective October 13, 1965, the Missouri legislature enacted § 351.471 which permits the revocation of the voluntary dissolution proceedings under § 351.465, at any time prior to the filing of articles of liquidation. The committee comment with respect to this amendment states: (Comment1965 Enactment, § 351.471)
Section 351.471 is a new section permitting a corporation to discontinue *1405 any dissolution proceedings which it had instituted. Prior to this statute, dissolution proceedings, once started, could not be stopped.
Plaintiff's position with regard to the comment is that dissolution proceedings, as far as the Statutes of Missouri are concerned, are not started until dissolution papers are filed with the State; that the plan of liquidation is a preparatory step with dissolution proceedings commencing under § 351.470 (filing of articles of dissolution with the Secretary of State) § 351.475 (execution of articles of liquidation, requiring no shareholder action), and § 351.480 (filing of articles of liquidation with the Secretary of State).
It is the opinion of the Court that the dissolution proceedings of MMS were not "started" until MMS filed the appropriate papers with the State of Missouri. Prior to that time the plan of complete liquidation adopted in March, 1964, could have been rescinded or abandoned by MMS. The filing of the articles of dissolution was not a mere ministerial act. Rather, it was the act by which the actual liquidation was commenced. Before that act of filing occurred, MMS was a viable entity, a corporation in existence and adopting the plan of liquidation in March, 1964, was a step in preparation which was undertaken by MMS for business reasons, primarily to comply with § 337 of the Internal Revenue Code.
Therefore, judgment will be entered in favor of plaintiffs and against the defendant in accordance with this memorandum. The parties have stipulated that the amount of the judgment is purely a matter of computation and that:
"The defendant will compute the amount of the judgment and submit it to the plaintiffs in order that an agreed judgment may be entered. If the parties are unable to agree on the computation within a reasonable time after entry of the decision, a hearing should be held to determine the proper amount of the judgment."