JOHN P. KINSEY AND EDITH B. KINSEY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6089–69. Filed May 10, 1972.

*John S. Murtha*, for the petitioners.
*Robert B. Dugan*, for the respondent.

IRWIN, *Judge:* Respondent determined a deficiency in petitioners' income tax for the year 1965 in the amount of $58,187.42. The question presented is whether petitioners are taxable on a distribution in liquidation in 1965 because of corporate stock donated to DePauw University

---

[1] See *Paul Garland*, T.C. Memo. 1971–79.

after the corporation had adopted a plan of liquidation under section 337 of the Code.[1]

Some of the facts have been stipulated. These facts and the exhibits attached thereto are herein incorporated by this reference.

John P. and Edith B. Kinsey, who are husband and wife, were residents of New Hartford, Conn., at the time the petition was filed in this case. In 1965 they filed a joint Federal income tax return with the district director of internal revenue in Hartford, Conn.

Container Properties, Inc. (Container) was a Connecticut corporation organized on March 17, 1948, to own and lease real property. On April 26, 1965, prior to the transactions in question here, the stock of Container was held as follows:

| Stockholder | Number of shares | Percent of ownership |
|---|---|---|
| John P. Kinsey | 425 | 74. 30 }81. 30 |
| Edith B. Kinsey | 40 | 7. 00 |
| Lawrence G. Kunkel | 63 | 11. 01 |
| Thomas M. Banta | 42 | 7. 34 |
| L. W. Seeton | 2 | . 35 |

On April 26, 1965, Container owned all of the issued and outstanding shares of LaPorte Property Corp. (LaPorte) and Carolina Properties, Inc. (Carolina). LaPorte was an Indiana corporation and Carolina was a North Carolina corporation and both engaged in the business of owning and leasing real property.

At a special meeting of Container's board of directors, held April 26, 1965, the directors (Messrs. Kinsey, Kunkel, and Banta) unanimously recommended the liquidation of Container under section 337 of the Internal Revenue Code. At a special meeting of the Container stockholders, held on the same day, the shareholders unanimously voted to approve the board's recommendation to liquidate Container.

The board held another special meeting on April 30, 1965, at which time it authorized the distribution by Container of all of the LaPorte and Carolina stock held by Container to the Container shareholders of record as of April 30, 1965. This distribution was the first step in the plan of liquidation adopted 4 days earlier. This distribution insured that the incipient sale of Container's assets would qualify for section 337 treatment. The shares of LaPorte and Carolina were distributed by Container on April 30 to the Container shareholders in proportion to their interests in Container. The gain realized by petitioners upon the distribution of this stock was included in their gross income in their return for 1965 as a distribution in liquidation.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended.

On May 7, 1965, Container, owner of all the stock of LaPorte and Carolina, adopted plans of liquidation of each of these companies.

On March 28, 1963, Container had executed an agreement to sell to the Waterbury Corrugated Container Co. (Waterbury) real estate owned by Container and its subsidiaries, LaPorte and Carolina, which those corporations had been leasing to Waterbury under various leases executed prior to that date. Under the agreement Waterbury agreed to purchase from Container the land, buildings, and all improvements therein owned by Container and its subsidiaries which were covered under the leases. Container had the right to designate the date that the sale should take place within a specified 3-year period, September 15, 1965, through September 15, 1968, and the agreement provided that "The date of sale shall be determined solely by the Lessor subject to the giving of at least 120 days' notice." The agreement also contained a consent by Container to the assignment of the leases held by Waterbury to Boise Cascade Corp. (Boise) or a subsidiary thereof pursuant to a plan of reorganization involving Waterbury and Boise.

On March 28, 1963, Waterbury and Boise had executed an agreement and plan of reorganization for the transfer of substantially all of Waterbury's assets to Boise or a designated subsidiary, and the assumption by Boise, or a designated subsidiary, of Waterbury's obligations and liabilities, with certain exceptions, in a transaction intended to qualify and which did qualify as a tax-free reorganization within the meaning of section 368(a)(1)(C) of the Code. As a result of the reorganization, Boise assumed Waterbury's obligation to purchase the real estate, buildings, and other property of Container, LaPorte, and Carolina.

By letter dated May 14, 1965, addressed to Boise, W. M. Pickett (Pickett), attorney for Container, notified Boise that Container was exercising its rights under the agreement dated March 28, 1965, by designating September 15, 1965, as the closing date upon which title to the property located in Stratford, Conn., would be transferred to Boise in consideration for the payment of $533,334. Carolina and LaPorte also at this time exercised their rights under the 1963 agreement to sell their property to Boise for the prices of $800,000 and $666,666, respectively.

DePauw University (DePauw), located at Greencastle, Ind., is exempt from Federal income tax as an organization described in section 501(c)(3) of the Code. Mr. Kinsey is an alumnus of DePauw and at a meeting held in New York City in May 1965, he agreed to make a gift to his alma mater. On July 7, 1965, in satisfaction of his commitment, Kinsey caused to be transferred to DePauw 325 shares of Container stock and similar proportional amounts of LaPorte and Carolina stock. On July 12, 1965, Robert E. Crouch, a personal

acquaintance of Mr. Kinsey for about 15 years and the secretary of alumni affairs for DePauw, acknowledged receipt of the certificates representing the shares so transferred. No restrictions were placed upon these shares; they were freely transferable by DePauw.

At the time the stock was transferred to the name of DePauw, neither the university nor its representative, Mr. Crouch, was advised that the corporation was in the process of liquidation. DePauw or its representative did not learn of the liquidation until the first liquidating distribution was received in October 1965.

It was the practice of the university to liquidate to cash any stock it received as a gift. The stock in question was not liquidated on the date of its receipt (July 12, 1965) because Mr. Crouch had been advised by petitioner John Kinsey to hold the stock pending advice from him as to how it could be liquidated. No further instructions were received by Mr. Crouch from his long-time friend, Mr. Kinsey, until the first distributions in liquidation were made.

Following the transfer of Container stock on July 7 by Kinsey to DePauw, Kinsey was left holding a 17.5-percent interest in Container; his wife's 7 percent was not altered by his transfer. The 325 shares transferred to DePauw represented a 56.8-percent interest in Container stock.

After the transfer of shares to DePauw, the liquidations continued to proceed in accordance with the plan adopted on April 26. No action was ever taken to terminate the liquidations of either Container, LaPorte, or Carolina.

Connecticut law, the Stock Corporation Act of Connecticut (tit. 33, Conn. Gen. Stat. Ann.), and the case law thereunder, govern the corporate actions of Container, its director, and shareholders. The Connecticut statutes require a vote of two-thirds of the shareholders for a corporation to adopt a resolution or to terminate a previously adopted shareholder resolution. By the same token, a two-thirds shareholder vote is required to amend a company's articles of incorporation.

Under the bylaws of Container a director is to hold office for a term of 1 year dated from the annual meeting of the shareholders. The bylaws, again following the provisions of the State corporate law, provide that a director shall continue in office for 1 year or until a successor is chosen. Section 33-317(c) of the State corporate law provides that a director's term of office may not be terminated or shortened by a vote to reduce the number of directors.

Messrs. Kinsey, Kunkel, and Banta had served as Container's directors since the company's inception in 1948. The Container bylaws provided 1-year terms for the directors running from the annual meeting of the company's shareholders which was held on the third Monday of every February.

On September 15, 1965, Container transferred all of its real property, including buildings and appurtenances thereto, located in Stratford, Conn., to Boise in exchange for $533,334. On the same date, Carolina transferred all of its real property, including buildings and appurtenances thereto, to Boise for $800,000. Similarly, on this same September 15, LaPorte transferred all of its real property, including buildings and appurtenances thereto, to Boise for $666,666.

At special meetings of the respective boards of directors of Container, Carolina, and LaPorte held on September 15, 1965, the directors of the three companies each adopted resolutions to dissolve the corporations on October 31, 1965, to pay all claims owing to creditors, and to distribute all remaining properties of the corporations to the stockholders in complete liquidation. From the date of adoption of the plan of liquidation until the completion of the sale of its assets, Container had continued to earn rental and interest income and incur certain operating expenses.

On October 22 and December 6, 1965, distribution of the remaining assets of all of the corporations was made. Container mailed checks to DePauw totaling $237,499.66, representing distributions in liquidation with respect to the 325 shares of Container stock owned by DePauw. It is this distribution to DePauw which respondent contends represents taxable income to the petitioners.

Container filed a certificate of dissolution with the secretary of state of Connecticut on November 17, 1965.

During the 1965 taxable year Container distributed $961,935.01 to petitioners. The major portion of this amount, $365,821.20 and $485,322.79, represented the value of the stock of Carolina and LaPorte, respectively, which was distributed to petitioners on April 30, 1965. $237,499.66 was distributed directly to DePauw in this year in connection with the 325 shares of Container stock donated to that institution by Mr. Kinsey.

On their tax return for taxable year 1965, petitioners claimed a charitable deduction in the amount of $237,499.66 with regard to the transfer of 325 Container shares to DePauw on July 7, 1965.

### OPINION

Petitioners have argued that an outright gift of 325 Container shares was made to DePauw on July 7, 1965; that all incidents of ownership inherent in that block of stock vested in DePauw on that date; that the date of the gift preceded the time when an enforceable right to the liquidation proceeds accrued (i.e., Sept. 15, 1965, when the Container board passed the final resolution of dissolution);

that the 325 shares in Container represented a controlling interest; and that the amount of the liquidating distributions could not be determined at the time of the gift and could not be correctly ascertained until September 15. Pointing to *Jacobs* v. *United States*, 280 F. Supp. 437 (S.D. Ohio 1966), affd. 390 F. 2d 877 (C.A. 6, 1968), and *W. B. Rushing*, 52 T.C. 888 (1969), affd. 441 F. 2d 593 (C.A. 5, 1971), petitioners maintain that the plan of liquidation was revocable at the time of the gift and that in September, when the final liquidating distributions were authorized, DePauw possessed the power to terminate the liquidation and should then be taxable on the proceeds in liquidation traceable to these 325 shares.

Respondent's contrary position is that the transfer of 325 shares to DePauw represents an anticipatory assignment of income which, however devised, should not serve to insulate petitioners from the incidence of taxation with respect to the liquidating distribution attributable to these shares. *Helvering* v. *Horst*, 311 U.S. 112 (1940) ; *Howard Cook*, 5 T.C. 908 (1945) ; *S. M. Friedman*, 41 T.C. 428 (1963), affd. 346 F. 2d 506 (C.A. 6, 1965). Respondent points to the votes of April 26, 1965, when the section 337 plan was unanimously adopted by the Container directors and shareholders and which was followed shortly by the exercise of rights to sell the Container real property to Waterbury's successor, Boise, under the terms of the outstanding 1963 agreement. It was only after these events and the first step in Container's liquidation (i.e., the distribution on Apr. 30, 1965, of Carolina and LaPorte stock to the then extant shareholders in Container) that Kinsey made his gift to DePauw. Respondent, therefore, contends that the liquidation had proceeded too far to be reversed and that since the donee, DePauw, could not subvert the imminent liquidation, petitioners cannot avoid taxation.

We agree with respondent. Because the first distributions under the plan of liquidation were made prior to Kinsey's gift and because the donee was powerless, both legally and as a practical matter, to change the course of events already unfolding, we are of the opinion that petitioners are indeed taxable on the liquidating distributions ascribable to the 325 shares of Container stock.

In a general discussion of cases similar to the one at hand, the District Court in *Winton* v. *Kelm*, 122 F. Supp. 649 (D. Minn. 1954), differentiated the transfer of stock which occurs when dissolution is contemplated but no vote to liquidate has transpired, and the situation where the transfer of stock does not occur until after the vote to liquidate has taken place. In the former situation, the taxpayer is deemed to escape taxation on the liquidation proceeds, while in the

latter circumstance the taxpayer does not avoid taxation on the resultant distributions in liquidation.

The more recent cases of *Jacobs* v. *United States, supra,* and *W. B. Rushing, supra,* carried this analysis one step beyond. The Tax Court and the District Court, respectively, in cases where a transfer of stock had occurred subsequent to the vote to liquidate, looked to see whether the donee had done any affirmative act to insure the continuance of the liquidation, or had the legal power to abandon or suspend the liquidation (even if such power was not utilized in fact). We found in *Rushing* that the donee in that case, a trust, did vote affirmatively to continue the process of liquidation while the court in *Jacobs* found that the donee could have abandoned the liquidation on its own although that power was not exercised. As a consequence of these findings, the result in both cases was that the respective taxpayers escaped taxation on the liquidation proceeds imputable to the shares given their donees.

Against this background, petitioners would have it that the gift of Container stock occurred prior to the corporate decision to liquidate and dissolve; in other words, the September 15 resolution to dissolve by the Container directors was a crucial concomitant to the April votes authorizing the liquidation. In any event, petitioners assert, the interest given DePauw was such that DePauw could have abandoned the liquidation and, hence, was similar to the power the donees in *Rushing* and *Jacobs* possessed and which allowed those taxpayers to avoid the incidence of taxation. We find, however, that because of the initial steps in liquidation, the final directors' resolution to dissolve was only of miniscule import and, furthermore, that the 56-percent interest DePauw received was not on par with that received by the donees in *Rushing* and *Jacobs.*

The Connecticut corporate law and the Container bylaws in conformance thereto provide that a two-thirds shareholder vote is required for the adoption of a plan of liquidation. This particular vote in the instant case was cast and the plan adopted on April 26, 1965. Shortly following this vote, Container exercised its rights to sell its business under the 1963 agreement with Waterbury (now succeeded by Boise). Crucially, both the vote adopting the section 337 plan and the exercise of the rights to sell the assets to Boise preceded the date of Kinsey's gift to DePauw, July 7, 1965. Furthermore, a substantial portion of Container's assets were distributed prior to the date of the gift. This first step in liquidation was authorized on April 30 and consisted of a distribution of the LaPorte and Carolina stock, all of which was held by Container. The stock distributed to petitioners as a result of their interest in Container at this time had a total

value of $851,143.99 and petitioners reported this amount on their 1965 return as a gain realized from a distribution in liquidation. The amount distributed to DePauw as a final liquidating distribution in September was $237,499.66 and petitioners treated this amount as a charitable contribution on their 1965 return.

With so much having transpired not only before the date of Kinsey's gift but also before the date of the final resolution to dissolve in September, we cannot consider the September 15 resolution a necessary and important accessory to the April authorization to liquidate. This final resolution was truly a mere formality, required by State law to officially bring the liquidation to an end. On July 7, when DePauw received the Container stock, there was little left to be done to complete the ongoing sequence of events.

DePauw's 56-percent interest was a majority one, but it did not control the company. A two-thirds vote of the shareholders would have been required to rescind the plan authorized in April, but DePauw could not singularly mount such strength. It is of no consequence that the other shareholders, even if they had been so inclined, could have joined DePauw and changed the ongoing sequence; what matters is that DePauw could not have done so *alone*. And, although DePauw's majority interest was sufficient to influence the election of Container directors, the exercise of that influence could not have occurred when the events in this case transpired. Kinsey, Kunkel, and Banta had been reelected to the Container board the previous February. They could not, however, be removed for 1 year save for cause and none was apparent. Furthermore, State law prevented any reduction in the number of directors serving on the board during the course of their term. Nothing affirmative was required of DePauw to continue the liquidation and it did not have the legal power necessary to stop it.

Petitioners were going to receive and about to realize a considerable gain from Container's liquidation, a liquidation which was effectively beyond the control of the donee at the time of the gift. They naturally sought to make a maximum contribution to DePauw with minimum tax consequences to themselves. The liquidation had proceeded to a stage where the transfer of Container shares also personified a transfer of the liquidation proceeds soon to come due on such shares. On the facts presented us here, petitioners cannot be allowed to insulate themselves from the incidence of taxation with respect to the liquidating distributions ascribable to the shares donated to DePauw.

*Decision will be entered for the respondent.*