ROBERT A. WEKESSER and EDITH KNIGHT WEKESSER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wekesser v. Commissioner
Docket No. 10044-74.
United States Tax Court
T.C. Memo 1976-214; 1976 Tax Ct. Memo LEXIS 188; 35 T.C.M. (CCH) 936; T.C.M. (RIA) 760214; July 1, 1976, Filed Philip G. Johnson and John C. Gourlay, for the petitioners. Barry S. Bloch, for the respondent. TIETJENS
MEMORANDUM OPINION TIETJENS, Judge: The respondent determined a deficiency of $6,070.64 and $1,325.46 in petitioners' income tax for the taxable years 1971 and 1972 respectively. The issue remaining for our determination is whether petitioners realized dividend *189 income when, after they had donated stock in their controlled corporation to a charitable organization, the corporation redeemed the stock from the organization. The facts with exhibits attached thereto having been fully stipulated are incorporated herein by this reference. The petitioners, Robert A, and Edith Knight Wekesser, are husband and wife. Their legal residence during 1971 and 1972 and at the time they filed their petition in this case was Lincoln, Nebraska. Petitioners filed joint individual income tax returns for the calendar years 1971 and 1972. They prepared these returns on the cash basis method of accounting. They filed their 1971 return with the Internal Revenue Service Center, Kansas City, Missouri and their 1972 return with the Internal Revenue Service Center, Ogden, Utah. Evergreen Corporation (hereinafter Evergreen) is a bank holding company incorporated under the laws of Nebraska on October 27, 1959, and its principal office is in Lincoln, Nebraska. It also operates an insurance agency. During 1971 and 1972 Robert A. Wekesser was president and treasurer of Evergreen and Edith Knight Wekesser was secretary. During 1971 petitioners were the directors *190 of Evergreen. During 1972 the directors were petitioners and their son Robert W. Wekesser. The addresses of petitioners and Evergreen were the same, 5301 A Street, Lincoln, Nebraska. Immediately prior to June 14, 1971, Evergreen had 440 shares of capital stock outstanding; Robert A. Wekesser owned 400 shares of stock and Edith Knight Wekesser owned 40 shares. By letter dated June 14, 1971, petitioners transmitted Evergreen Stock Certificate Number 6, representing 20 shares of Evergreen stock, to the Westminster Presbyterian Church with the request that it be applied t pledges made by the petitioners to the church building fund and the operation budget of the church. By the same letter, they requested that any surplus be used to support the church's summer intern program. On June 16, 1971, the church administrator acknowledged receipt of the certificate and mailed it to Evergreen to be reissued in the name of the church. In the same letter the church inquired as to the market for Evergreen stock and whether Evergreen desired to purchase Evergreen stock held by the church. Evergreen issued Stock Certificate Number 8 to the church on June 18, 1971 and in a letter informed *191 the church that no market existed for its stock. It then offered to purchase the 20 shares of stock for $10,000. At that time 20 shares of capital stock of Evergreen had a fair market value of $9,000. Robert A. Wekesser was a member of the Westminster Presbyterian Church eleven-member board of trustees. It was the policy of the board of trustees to immediately dispose of all securities received from the membership. In a letter dated June 19, 1971, the church accepted Evergreen's offer of the previous day and assigned Stock Certificate Number 8 to Evergreen. Immediately prior to June 19, 1971 Westminster Presbyterian Church owned 20 shares of corporate stock of Evergreen. Evergreen canceled the stock certificate and transmitted to the church on June 21, 1971, a check for $10,000 in payment for 20 shares of stock. On their Federal income tax return for the year 1971, petitioners claimed a charitable deduction of $10,000 attributable to the transfer of the 20 shares of stock. On July 10, 1971, Robert A. Wekesser gave each of his four children 10 shares of Evergreen capital stock. On December 24, 1971, Evergreen declared a 100 percent stock dividend. Immediately prior to *192 November 18, 1972, Evergreen had 940 shares of capital stock outstanding; Robert A. Wekesser owned 690 shares, Edith Knight Wekesser owned 90 shares and the Wekessers' children owned 160 shares. By letter dated November 18, 1972, Robert A. Wekesser mailed a certificate for 10 shares of the capital stock to Westminster Presbyterian Church with the request that it be applied to the petitioners' pledges to the church's 1972 and 1973 budgets. In a letter dated November 30, 1972, the church administrator acknowledged receipt of the certificate and returned it for the purpose of having it reissued in the name of the church. It also inquired as to the market for Evergreen stock and whether Evergreen desired to purchase Evergreen stock held by the church. Evergreen issued Stock Certificate Number 28 to the church on December 1, 1972 and informed the church that no market existed for its stock. It then offered to purchase the 10 shares of stock for $2,500. The 10 shares of corporate stock of Evergreen had a fair market value of $2,250 at the time they were transferred to the church. By letter dated December 5, 1972, the church accepted Evergreen's offer. Immediately prior to December 5, 1972, Westminster *193 Presbyterian Church owned 10 shares of corporate stock of Evergreen. Evergreen canceled the stock certificate and transmitted to the church on December 7, 1972 a check for $2,500 in payment for the 10 shares of stock. On their Federal income tax return for the year 1972, petitioners claimed a charitable deduction of $2,500 attributable to the transfer of the 10 shares of stock of Evergreen to Westminster Presbyterian Church. Respondent has challenged the gift of stock to the church by asserting that petitioners realized dividend income when Evergreen redeemed the stock donated by petitioners. In support of this contention, respondent argues that the transfers and subsequent redemptions were interdependent steps of a single integrated transaction; alternatively, that the transfers to the church constituted anticipatory assignments of the proceeds of corporate distributions, and as a third alternative that the transfers and subsequent redemptions satisfied the petitioners' church pledges and carried out the petitioners' charitable desires. Similar attacks have been presented by respondent in a variety of cases involving gifts of stock followed by its redemption, and the attacks *194 have generally been rejected by the courts. Daniel D. Palmer,62 T.C. 684 (1974); Grove v. Commissioner,490 F.2d 241 (2d Cir. 1973), affirming a Memorandum Opinion of this Court; Carrington v. Commissioner,476 F.2d 704 (5th Cir. 1973), affirming a Memorandum Opinion of this Court; Humacid Co.,42 T.C. 894 (1964); Behrend v. United States, an unreported case (4th Cir. 1972, 31 AFTR 2d 73-406, 73-1 USTC par. 9123); Dewitt v. United States,503 F.2d 1406 (Ct. Cl. 1974); Sheppard v. United States,361 F.2d 972 (Ct. Cl. 1966); Winton v. Kelm,122 F. Supp. 649 (D. Minn. 1954); Apt v. Birmingham,89 F. Supp. 361 (N.D. Iowa 1950), Despite respondent's assertions we conclude that the facts in this case are in line with the above cited cases. Respondent first urges that "petitioners in substance and effect redeemed their Evergreen stock, and then transferred the redemption proceeds to [the] Church." Basing this assertion on the sound and well established principle that taxation depends upon the substance of the transaction and not mere *195 formalism, [1] respondent describes the transfers and redemptions as interdependent. Respondent then urges the Court to apply the following test to determine whether the transfers and redemptions should be treated as a single, indivisible transaction. This test is "whether the various steps were 'so interdependent that the legal relations created by one transaction would have been fruitless without the completion of the series.'" [2] To underscore his position respondent points to the church's policy of disposing of donated stock, to petitioner Robert A. Wekesser's position as a member of the church's board of trustees, to petitioners' knowledge that no market existed for the stock and to petitioners' control of Evergreen. Respondent also emphasizes the short duration of the church's ownership of Evergreen stock and petitioners' direct and indirect ownership of 100 percent of the stock prior to the donations and after the redemptions. *196 Despite respondent's contentions and the undoubted validity of the above stated doctrines, we find them to be inapplicable in this case. In Palmer,62 T.C. at 693, we stated, "Even though the donor anticipated or was aware that the redemption was imminent, the presence of an actual gift and the absence of an obligation to have the stock redeemed have been sufficient to give such gifts independent significance." The facts indicate that the church, not the petitioners, initiated the redemption of the stock, that the church had complete power to prevent the redemption and that the church offered the stock for redemption because it was in its best interest to do so. Furthermore, even if it had been petitioners' plan that the stock be redeemed, the church had the power to reverse that plan. As for the shortness of the time interval this was apparently due to the church's investment policies. See Palmer,supra;Carrington,supra;Grove,supra. Furthermore, we are in agreement with the Second Circuit's analysis of respondent's "substantial effect" arguments wherein it stated in Grove, at 247: *197 We are not so naive as to believe that tax considerations played no role in Grove's planning. But foresight and planning do not transform a non-taxable event into one that is taxable. Were we to adopt the Commissioner's view, we would be required to recast two actual transactions--a gift by Grove to RPI and a redemption from RPI by the Corporation--into two completely fictional transactions--a redemption from Grove by the Corporation and a gift by Grove to RPI. Based upon the facts as found by the Tax Court, we can discover no basis for elevating the Commissioner's 'form' over that employed by the taxpayer in good faith. 'Useful as the step transaction doctrine may be in the interpretation of equivocal contracts and ambiguous events, it cannot generate events which never took place just so an additional tax liability might be asserted.' Sheppard v. United States, supra, at 978. In the alternative, respondent argues that the transfers to the church constituted anticipatory assignments of the proceeds of corporate distributions. He relies upon two cases for support of this theory, *198 Hudspeth v. United States,471 F.2d 275 (8th Cir. 1972), reversing 335 F. Supp. 1401 (E.D. Mo. 1971), and Kinsey v. Commissioner,477 F.2d 1058 (2d Cir. 1973), affirming 58 T.C. 259 (1972). In both of these cases taxpayers donated stock to charitable organizations after corporate liquidation plans had been adopted. The courts held that the charitable organizations had no power to reverse the intent to liquidate; therefore, the transfers of the stock were in substance transfers of liquidation proceeds. Respondent argues that the facts in this case are analogous. He asserts that petitioners' rights to the redemption proceeds, although not legally fixed, were both socially and morally fixed at the time of the stock transfers to the church because petitioners were aware of the church's policy about gifts of stock, because there was no market for the stock and because they controlled Evergreen. In addition, respondent argues that petitioners' pledges and charitable desires would be satisfied only if the stock were redeemed by Evergreen. Respondent, in making his argument, ignores the fact that the redemption of the Evergreen *199 stock was under the control of the church and the fact that even if petitioners had planned the redemption, the church had the power to prevent it. Palmer,supra.
Respondent argues as a final alternative that the transfers and subsequent redemptions satisfied the petitioners' church pledges and carried out the petitioners' charitable desires; consequently petitioners realized constructive dividends as a result of the redemptions. Respondent supports this argument by claiming that petitioners failed to establish that Evergreen had any business purpose for redeeming its stock. Instead, he asserts, the redemptions were designed to give substance to petitioners' charitable desires. Petitioners make no argument with respondent's basic premise that when a corporation pays the private debts of a shareholder, the shareholder receives a constructive dividend, but claim that the redemptions were not payments of private debts. We are in agreement with petitioners. Even if the pledges might be considered debt, any debt was extinguished by the gift of the shares of stock, not by the subsequent redemption. *200 However, in effect, Revenue Ruling 55-410, 1955-1 C.B. 297, holds that a charitable pledge does not create a debt for Federal income tax purposes. See Revenue Ruling 64-240, 1964-2 C.B. 172, which covers almost the same point as that raised by respondent. It holds that the income of a trust which is applied, under the terms of the trust, to discharge a charitable pledge made by the grantor would not be taxable to him as the owner of the trust under section 677 of the Internal Revenue Code of 1954. In arriving at this conclusion, the Revenue Ruling states: Under section 677 of the Code, as interpreted by section 1.677(a)-1(d) of the Income Tax Regulations, a grantor is, in general, treated as the owner of a portion of a trust whose income is, or, in the discretion of the grantor or a nonadverse party, or both, may be applied in discharge of a legal obligation of the grantor. Revenue Ruling 55-410, C.B. 1955-1, 297, holds that the satisfaction of a pledge made to an organization described in section 23(0) of the Internal Revenue Code of 1939, corresponding to section 170 of the Internal Revenue Code *201 of 1954, by means of a donation or gift of property which has either appreciated or depreciated in value does not give rise to a taxable gain or a deductible loss. The ruling states, in part, that it would be inconsistent to treat such payment or transfer as a contribution or gift and at the same time as a satisfaction of a debt with the tax consequences which would ordinarily follow from the use of appreciated or depreciated property to pay a debt. In effect, that ruling holds that a charitable pledge does not create a debt for Federal income tax purposes. Thus, a charitable pledge is not a legal obligation for purposes of section 677 of the Code. [Emphasis supplied.] Respondent asserts that the case of Russell E. Phelon,T.C. Memo. 1966-199, is "directly on point." We disagree. Phelon owed a personal debt, not a debt to a charity, but to a private individual. The redemption proceeds were used at his direction to pay this personal noncharitable debt to a third party. Respondent also quotes Security First Nat. Bank of Los Angeles, Executor,28 B.T.A. 289, 310-311 (1933), in such a way that it seems to support his position. He states: *202 * * * it was held that a corporation's shareholder received a constructive dividend when at his direction, the corporation transferred property to a trust to enable the trust to acquire art work for a free public art gallery and library bearing the shareholder's name. This is not a fair statement of that case, It omits the fact that the shareholder had absolute dominion and control over the trust and, to quote from the decision, "He was free at any moment, with reason or without, to revest title in himself." Burnet v. Guggenheim,288 U.S. 280 (1933). Of course, the transfer by his corporation to such a trust would be a constructive dividend to him, but it would be taxable to him because the income was subject to his unfettered command, Corliss v. Bowers,281 U.S. 376 (1930), and not because the gift or subsequent redemption gave substance to the petitioner's charitable desires. Decision will be entered under Rule 155. Footnotes
1. Commissioner v. Court Holding Co.,324 U.S. 331, 334↩ (1945). 2. American Wire Fabrics Corp.,16 T.C. 607, 613 (1951), citing American Bantam Car Co.,11 T.C. 397 (1948), affd. 177 F.2d 513 (3d Cir. 1949), cert. denied 339 U.S. 920↩ (1950).