**John P. KINSEY and Edith B. Kinsey, Petitioners-Appellants,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 644, Docket 72-2071.**

United States Court of Appeals, Second Circuit.

Argued March 26, 1973.

Decided May 7, 1973.

---

John S. Murtha, Hartford, Conn. (Murtha, Cullina, Richter & Pinney, and Peter G. Gillin, Hartford, Conn., on the brief), for petitioners-appellants.

William A. Friedlander, Atty., Tax Div., Dept. of Justice (Scott P. Crampton, Asst. Atty. Gen., and Meyer Rothwacks, Atty., Tax Div., Dept. of Justice, on the brief), for respondent-appellee.

Before FRIENDLY, Chief Judge, LUMBARD, Circuit Judge, and THOMSEN,* District Judge.

THOMSEN, District Judge:

This appeal by taxpayers John P. Kinsey (Kinsey) and his wife presents the question whether they were entitled to exclude from gross income the liquidating dividends received by DePauw University on shares of stock of Container Properties, Inc. (Container), which Kinsey had given to DePauw after the directors and stockholders of Container had adopted a plan of liquidation under § 337 of the Internal Revenue Code, had already made distributions in liquidation of a major portion of its assets, and had taken steps to dispose of the rest.

The facts, which are not disputed, are set out in the opinion of the Tax Court, 58 T.C. 259 (May 10, 1972).

Container was a Connecticut corporation organized in 1948 to own and lease real property. On April 26, 1965,[1] immediately before the transactions involved in this case, 572 shares of its stock were outstanding. Kinsey owned 425 shares (74.30%), his wife 40 shares (7.00%); Kunkel and Banta, who were employees and directors of Container, owned 63 shares (11.01%) and 42 shares (7.34%) respectively; the remaining 2 shares (.35%) were owned by Seeton.

Container owned all of the issued and outstanding shares of two other corporations (LaPorte and Carolina), both of which were engaged in the business of owning and leasing real property.

At a meeting of Container's board of directors on April 26, the directors unanimously recommended the liquidation of Container under § 337 of the Internal Revenue Code of 1954. On the same day, Container's shareholders unanimously approved the board's recommendation.

On April 30, Container's directors authorized, as the first step in the liquidation, the distribution by Container of all its LaPorte and Carolina stock to Container's shareholders of record as of April 30, 1965.[2]

At the time of the adoption of the liquidation plan there was in existence an agreement, made in 1963, under which Container was obligated to sell and Boise Cascade Corp. (Boise) was obliged to purchase all the real estate leased by Container and its subsidiaries to Boise and its predecessor in title.[3] Container had the right to designate the date on which the sale would take place,[4] upon giving 120 days notice. By letter to Boise dated May 14, Container designat-

---

* Of the District of Maryland, sitting by designation.

1. All dates referred to are in 1965, unless otherwise indicated.

2. In their 1965 return Kinsey and his wife included, as a distribution in liquidation, entitled to capital gain treatment, the gain realized by them upon the distribu-

tion by Container of the LaPorte and Carolina stock.

3. Under the agreement Container was to receive $533,334, Carolina $800,000 and LaPorte $666,666.

4. Within a specified three-year period, beginning September 15, 1965.

ed September 15, 1965, as the closing date.

Kinsey is an alumnus of DePauw, and at a meeting in New York in May he agreed to make a gift to his alma mater. On July 7, in satisfaction of his commitment, Kinsey transferred to DePauw 325 shares of Container stock and similar proportional amounts of LaPorte and Carolina stock, which had been distributed to him by Container. On July 12, Robert E. Crouch, the secretary of alumni affairs for DePauw and a personal acquaintance of Kinsey for about 15 years, acknowledged receipt of the certificates representing the shares so transferred. No restrictions were placed upon the further transfer of those shares.

It was the normal policy of DePauw to sell any stock it received as a gift. The shares in question were not sold, because Kinsey had advised Crouch to hold the stock pending advice from Kinsey as to how it could be liquidated. No such advice was requested by DePauw or given by Kinsey before DePauw received Container's distribution in liquidation in October 1965.

The 325 shares transferred to DePauw represented a 56.80% interest. Under Connecticut law [5] a vote of two-thirds of the shareholders is required for a corporation to adopt a resolution of liquidation or to terminate such a resolution previously adopted by the shareholders. After the transfer of shares to DePauw, the liquidation proceeded in accordance with the plan adopted on April 26. No action was ever taken by anyone to terminate the liquidation of Container, LaPorte or

Carolina. On September 15, Container transferred all of its real property to Boise for $533,334.[6]

At special meetings of the respective boards of Container, LaPorte and Carolina on September 15, the directors of each corporation resolved to dissolve the corporation on October 31, 1965, to pay all claims owed to creditors and to distribute in complete liquidation all remaining properties of the corporations to their respective shareholders. From the date of adoption of the plan of liquidation in April until the completion of the sale of its assets in September, Container had continued to earn rental and interest income and to incur some operating expenses.

On October 22 and December 6 distribution of the remaining assets of all three corporations was made.[7] Container mailed checks to DePauw totaling $237,499.66, representing distributions in liquidation with respect to and in exchange for the 325 shares of Container stock which had been transferred by Kinsey to DePauw. Container filed a certificate of dissolution with the Secretary of State of Connecticut on November 17.[8]

On their tax return for taxable year 1965, the Kinseys claimed a charitable deduction in the amount of $237,499.66 based upon the transfer of 325 Container shares to DePauw on July 7, 1965. As noted above, the question at issue in this case is whether Kinsey was entitled to exclude from his gross income the capital gain resulting from the distribution in liquidation of those shares.

Kinsey argued in the Tax Court and argues here that an outright gift of 325

---

5. Conn.Gen.Stat.Anno., § 33–376(c), § 33–329(d).

6. On the same date, Carolina transferred all of its real property to Boise for $800,000, and LaPorte transferred all of its real property to Boise for $666,666.

7. With the exception of assets in the amount of $26,335.47, which were retained

to satisfy accounts payable and taxes and to provide a reserve for expenses.

8. During the 1965 taxable year Container distributed $961,935.01 to the Kinseys. The major portions of this amount, $365,821.20 and $485,322.79, represented the value of the stock of Carolina and LaPorte, respectively, which was distributed to the Kinseys on April 30, 1965.

Container shares was made to DePauw on July 7; that all incidents of ownership inherent in that block of stock vested in DePauw on that date; that the gift preceded the time when an enforceable right to the liquidation proceeds accrued; that the 325 shares represented a controlling interest in Container; that the amount of the liquidating distributions could not be determined at the time of the gift and could not be correctly ascertained until September 15, when the Container board passed the final resolution of dissolution; that the plan of liquidation was revocable, without Kinsey's concurrence, from the time of the gift until the final liquidation distributions were authorized.

The Commissioner argued and argues that the transfer of 325 shares to DePauw constituted an anticipatory assignment of income which, however devised, should not serve to insulate Kinsey from the incidence of taxation with respect to the liquidating distribution attributable to those shares. Referring to the corporate actions set out above, the Commissioner argued and argues that despite any remote, technical possibility of a rescission of the plan of liquidation, and the fact that a liquidating dividend had not yet been formally declared at the time of the gift, the taxpayer had for all practical purposes transferred nothing but a right to receive a liquidating dividend, and that this reality controls the tax consequences.

After discussing the facts and law, the Tax Court held that the liquidation had proceeded to a stage where the transfer of Container shares was in substance a transfer of the liquidation proceeds soon to come due on such shares, and concluded: "On the facts presented us here, petitioners cannot be allowed to insulate themselves from the incidence of taxation with respect to the liquidating distributions ascribable to the shares donated to DePauw." 58 T.C. at 266.

In Hudspeth v. United States, 471 F. 2d 275 (8 Cir. 1972), the leading authorities are carefully and accurately analyzed; that analysis need not be repeated here.

A close case on the facts is Jacobs v. United States, 280 F.Supp. 437 (S.D. Ohio, 1966), affirmed, 390 F.2d 877 (6 Cir. 1968). In *Jacobs* the taxpayers owned 1035 out of 1935 shares of outstanding stock of a Kentucky corporation. After its shareholders had adopted a plan of liquidation under § 337 of the Code and approved a sale of the corporation's assets, and after part of the sale price had been received and the corporation had filed a notice of the plan with the Commissioner, taxpayers transferred to the Jacobs Family Foundation 90 shares of the corporation's stock. The district judge, whose opinion was adopted by the Sixth Circuit, held that the taxpayers had made a gift of 90 shares of the corporation to an "exempt charitable organization rather than an assignment of a right to liquidation dividends and is therefore entitled to judgment". He based his conclusion on the following finding: "In spite of the arguments concerning the unlikelihood of a repudiation of the dissolution proceedings prior to their finality, the fact remains that such abandonment was entirely possible." 280 F.Supp. at 439.

The facts in *Hudspeth*, supra, are also generally similar to the facts in the instant case. In *Hudspeth* the taxpayer had made the gift to a charity after the plan of complete liquidation had been adopted and steps to carry it into effect had been taken. The gift in *Hudspeth* left the donor with a majority of the stock. The district court found the crucial issue to be whether, after adoption, the plan of liquidation was irreversible under state law. If so, the taxpayer was "absolutely and indefeasibly entitled in the immediate future to the liquidating distributions on the stock donated by him", Hudspeth v. United States, 335 F.

Supp. 1401, 1404 (E.D.Mo.1971), and there had been an assignment of income. The court, after examining state law, found that the adopted plan had been reversible and, therefore, following *Jacobs,* held that no assignment of income had occurred.

The Eighth Circuit disagreed, saying, 471 F.2d at 277:

"In viewing the applicable Missouri statutes we find the lower court's interpretations to be untenable as the dissolution proceedings were, in fact, 'started' at the time of the shareholders' approval of the plan of complete liquidation. As a result, the liquidation would have been irreversible as of April 10, 1964, under the laws of Missouri in effect at the time of this dissolution, and on the basis of the test outlined by the District Court we would have to conclude that the taxpayers' gifts were anticipatory assignments of the inherent gains and thus taxable to him.

"However, a review of the pertinent Federal law in this area convinces us that we must further reject the lower court's finding that the crucial question in this case is, in effect, a determination of whether it was technically possible under Missouri law for the taxpayer to abandon the impending dissolution between the time of his gift and the time of the actual liquidation distributions. While *Jacobs* suggests such a test, we cannot concur in its application herein. Instead, we must sustain appellant's contention that the realities and substance of the events must govern our determination, rather than formalities and remote hypothetical possibilities. Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916 (1930); Howard Cook, 5 T.C. 908 (1945)."

Among the cases discussed in *Hudspeth* was the Tax Court's decision in the instant case, Kinsey v. Commissioner, 58 T.C. 259. The Eighth Circuit an-

alyzed the Tax Court decision as follows:

" * * * Although the donee had received a majority interest in the corporation, the court distinguished *Rushing* [52 T.C. 888], by noting that a two-thirds vote of the shareholders would have been required to rescind the earlier authorization to liquidate and thus the donee could not have suspended the dissolution on its own. The taxpayer in *Kinsey* had argued, like the taxpayer herein, that the date of the gift preceded the time when an enforceable right to the liquidation proceeds accrued (i. e., when the corporation's board passed the final resolution of dissolution), but the court held:

" 'With so much having transpired not only before the date of Kinsey's gift but also before the date of the final resolution to dissolve in September, we cannot consider the September 15 resolution a necessary and important accessory to the April authorization to liquidate. This final resolution was truly a mere formality, required by state law to officially bring the liquidation to an end.' " 471 F.2d at 280.

The Eighth Circuit continued:

"Similarly, the corporation's filing of the Articles of Dissolution and Liquidation with the state of Missouri [i. e. the filings by MMS, the corporation involved in *Hudspeth*] were merely ministerial acts necessary to complete the liquidation under state law. We cannot countenance transfers such as presented herein and eviscerate established principles of anticipatory assignment of income by considering remote, hypothetically possible abandonments in the face of unrebutted evidence that the taxpayer intended to and did, in fact, complete the liquidation of his corporation. Through his continued control of the corporation he had foreclosed the possibility of having his intent vitiated. He had

made contributions not of stock, but of the proceeds of the liquidation, and he is properly taxable on the gain arising therefrom." 471 F.2d at 280.

■ The Missouri law and the retention by the donor of a majority of the stock in *Hudspeth* made it a stronger case for the Commissioner than the instant case. But we believe that the basic principle stated by the Eighth Circuit—"that the realities and substance of the events must govern our determination, rather than formalities and remote hypothetical possibilities"—is applicable here, and should control.

■ The realities and substance of the events in this case are that a plan of liquidation of Container under § 337 had been adopted by its directors and shareholders; that said decision could only have been reversed by a two-thirds vote of the shareholders; that although De-Pauw had a majority of the shares it did not have two-thirds; and if one or more of the other shareholders sufficient to make up two-thirds had joined DePauw in attempting to stop the liquidation, the practical effect would have been to jeopardize the right of the shareholders to treat the previous distributions as capital gains rather than ordinary income and to subject the corporation to a tax on the property sold to Boise. Moreover, it would have been contrary to DePauw's policy of liquidating shares of stock given to it, whereas the completion of the liquidation was in accord both with that policy and with the obvious intention of Kinsey.

Realistically considered, in the light of all the circumstances, the transfer of the Container stock to DePauw was an anticipatory assignment of the liquidation proceeds. Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930); Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940).

The decision of the Tax Court is affirmed.