Virginia K. JONES, Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 75–1691.

United States Court of Appeals,
Sixth Circuit.

Submitted Oct. 6, 1975.

Decided Feb. 23, 1976.

Rehearing Denied March 30, 1976.

William W. Milligan, U. S. Atty., Columbus, Ohio, Scott P. Crampton, Gilbert E. Andrews, Jr., Chief, Appellate Section, Tax Division, Dept. of Justice, Leonard J. Henzke, Jr., Robert S. Watkins, Washington, D. C., for defendant-appellant.

Bradley Hummel, George D. Massar, Robert H. Taylor, Gingher & Christensen, Columbus, Ohio, for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and WEICK, EDWARDS, CELEBREZZE, PECK, McCREE, MILLER, LIVELY and ENGEL, Circuit Judges.

McCREE, Circuit Judge.

This is an appeal from the district court's order granting plaintiff's motion for summary judgment in a tax refund suit. The only issue on appeal is whether the taxpayer's donation of shares of corporate stock to a charity, after the corporation had adopted a plan of complete liquidation, constitutes an anticipatory assignment of income that warrants treating the liquidation proceeds

as income to the taxpayer. We determine that the transaction should be treated as an anticipatory assignment of income and, accordingly, overrule our decision to the contrary in *Jacobs v. United States*, 390 F.2d 877 (6th Cir. 1968), *aff'g per curiam*, 280 F.Supp. 437 (S.D.Ohio 1966).

The relevant facts were stipulated and may be briefly stated. Virginia Kelsey Jones owned approximately ten percent of the outstanding stock in the Buckeye Union Casualty Company, a business that owned two subsidiary insurance companies, Mayflower Insurance Company and Buckeye Union Fire Insurance. On January 19, 1965, the directors of the three companies adopted a plan of liquidation. On February 15, 1965, the stockholders of the companies ratified and approved the liquidation plan by a vote of 968,605 to 175. After the ratification, the companies sought and obtained approval from the Department of Insurance of the State of Ohio for the issuance of reinsurance agreements and for the sale of goodwill and fixed assets to another insurance company. On June 15, 1965, the Buckeye Union Casualty Company board of directors approved several liquidation arrangements. At the same time, the directors authorized the sending of a letter to the stockholders informing them that the first liquidating dividends would be exchanged for stock in October 1965.

On June 17, 1965, the taxpayer donated 4,250 shares of Casualty stock to various public charities. As planned, the liquidating distributions began in October and were completed by January 14, 1966, within one year of the adoption of the plan of liquidation as required to qualify for nonrecognition of the gain to the corporation under section 337 of the Internal Revenue Code of 1954.[1] The taxpayer claimed a charitable deduction from her 1965 federal income tax

return of $170,000 for the donated stock. The Internal Revenue Service allowed the charitable deduction, but, viewing the transactions as anticipatory assignments of liquidation proceeds, determined that the taxpayer also received income in the amount of $168,328.29 (the basis of the stock was $1,671.71). Accordingly, the IRS assessed the long-term capital gain tax due as $42,082.07. Taxpayer paid that amount and, on May 24, 1973, filed this tax refund suit in federal district court.

On the stipulated facts, the district court granted summary judgment in favor of the taxpayer. Correctly applying the rationale of *Jacobs v. United States*, 280 F.Supp. 437 (S.D.Ohio 1966), *aff'd*, 390 F.2d 877 (6th Cir. 1968), the district court reasoned that because Casualty shareholders could have abandoned liquidation proceedings after taxpayer had made her gift, the gift should not be viewed as an anticipatory assignment of liquidation proceeds. In *Jacobs*, as in this case, the taxpayer donated corporate stock to a charity after the shareholders had adopted a plan of complete liquidation but before actual distribution of the liquidation proceeds was made. The *Jacobs* court held that the taxpayer was entitled to exclude the corporate liquidation dividend from income because abandonment of the adopted plan, although apparently unlikely, was "entirely possible." 280 F.Supp. at 439.

The Government asks us to overrule our precedent and align ourselves with the views expressed by two other circuits after our decision in *Jacobs*. *Hudspeth v. United States*, 471 F.2d 275 (8th Cir. 1972) and *Kinsey v. Commissioner of Internal Revenue*, 477 F.2d 1058 (2d Cir. 1973). In *Hudspeth*, a majority stockholder in a closely held corporation donated part of his holdings to nine tax-exempt charities approximately nine months after the corporation

---

1. Section 337 provides in pertinent part:

   *(a) General rule.*—If—

   (1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

   (2) within the 12-month period beginning on the date of the adoption of such plan, all

   of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

   then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

had adopted a plan of liquidation. The Eighth Circuit agreed with the Government's contention that "the realities and substance of the events must govern . . . rather than formalities and remote hypothetical possibilities." 471 F.2d at 277.

The *Hudspeth* court analyzed the facts in that case as follows:

> The shareholders' vote is the critical turning point because it provides the necessary evidence of taxpayer's intent to convert his corporation into its essential elements of investment basis and, if it has been successful, the resulting gains. This initial evidence of the taxpayers' intent to liquidate is reinforced by the corporation's contracting to sell its principal assets and the winding-up of its business functions. In the face of this manifest intent, only evidence to the contrary could rebut the presumption that the taxpayer was, in fact, liquidating his corporation. Yet here the record is barren of any evidence that the taxpayer had any intent other than that of following through on the dissolution. The liquidation had proceeded to such a point where we may infer that it was patently never taxpayer's intention that his donees should exercise any ownership in a viable corporation, but merely that they should participate in the proceeds of the liquidation. 471 F.2d at 279.

Similarly, in *Kinsey v. Commissioner of Internal Revenue*, 477 F.2d 1058 (2d Cir. 1973), the court held that a majority shareholder's donation of stock in a corporation that was about to be liquidated constituted an anticipatory assignment of liquidation proceeds and that the taxpayer was not entitled to exclude from gross income the capital gains resulting from the distribution. The Second Circuit applied the "realities and substance" test in reviewing the facts, and identified three reasons why it was unlikely that the plan of liquidation would be abandoned. The reasons identified were: (1) that a plan of liquidation under section 337 had been adopted and that section requires liquidation within one year of the adoption of the plan in order for the corporation to avoid a taxable gain on the sale of assets; (2) the donee, although holding a majority of the stock, did not have the requisite two-thirds control to unilaterally prevent the liquidation; and (3) the donee's policy was to liquidate shares of stock given to it. The court's conclusion was that: "Realistically considered, in the light of all the circumstances, the transfer of the . . . stock to DePauw [University] was an anticipatory assignment of the liquidation proceeds." 477 F.2d at 1063.

Upon consideration, we are persuaded to adopt the rule expressed by the Second and Eighth Circuits that the "realities and substance" of the events and not hypothetical possibilities should govern our determination whether an anticipatory assignment of income has occurred. We conclude that the realities and substance of the events in this case indicate that the taxpayer expected the liquidation proceedings to be completed. In fact, the taxpayer explained in a letter to the Dean of the College of Medicine of Ohio State University (one of the donees) that the company was being liquidated and that he would be notified by a bank officer when to present the stock for cash redemption. Also, the liquidation was conducted in accordance with section 337 of the Internal Revenue Code of 1954, which requires a corporation to liquidate within one year from the adoption of a plan of liquidation in order for the corporation to be eligible for non-recognition of any gain on the sale of assets. If the liquidation had not been completed, the corporation would have had to recognize a substantial taxable gain on the assets that were sold. These circumstances, in combination with the overwhelming shareholder vote (968,605 to 175) approving the liquidation plan, indicate the practical certainty of the completion of the liquidation proceedings. We hold that taxpayer here anticipatorily assigned liquidation proceeds to donees.

We find no merit to taxpayer's contentions that (1) even if the "realities and

substance" test is applied, no anticipatory assignment of income occurred, or (2) that *Kinsey* and *Hudspeth* are distinguishable. Appellee argues that since other shareholders also had a nominal basis in the stock and could expect a sizeable tax burden as a result of the liquidation, it was conceivable that the plans to liquidate might be abandoned. We believe that the overwhelming shareholder vote in favor of liquidation indicates that the shareholders had considered, at the time of the vote, whether to incur a substantial capital gain liability. As the Government suggests, the taxpayer's argument "boils down to the fact that here, as in any case, the shareholders might decide to rescind a liquidation plan at any time." In addition, taxpayer claims that the liquidation was uncertain because after she had donated her stock, Casualty still had to sell a substantial number of assets. Although it is true that assets still remained to be sold when the taxpayer donated her shares, there appears to be no reason to conclude that the assets would not have been sold or that the liquidation would not have been completed within one year as required by section 337.

Taxpayer attempts to distinguish *Hudspeth* and *Kinsey* because the taxpayers in those cases were controlling shareholders of the corporation that was to be liquidated.[2] The *Hudspeth* court did emphasize the fact that taxpayer controlled the corporation and that the donees would be "powerless to vitiate taxpayers' manifest intent to liquidate . . . ." 471 F.2d at 279. However, we view a taxpayer's control over the corporation as only one factor[3] in determining whether a liquidation is practically certain to occur, and we determine here that there is sufficient evidence to conclude that the liquidation plan was practically certain to be completed de-

spite the remote and hypothetical possibility of abandonment. Also, we do not regard as significant the four to seven month delay from the date of the gift until the time that the liquidating distributions were made to the donees. The liquidating distributions in *Kinsey v. Commissioner of Internal Revenue,* 477 F.2d 1058 (2d Cir. 1973), did not occur over a significantly shorter period of time (three to five months). Accordingly, we overrule *Jacobs v. United States,* 390 F.2d 877 (6th Cir. 1968), and reverse the judgment of the district court. Reversed and remanded.

LIVELY, Circuit Judge (dissenting).

I respectfully dissent. In reversing the district court the majority opinion relies primarily on the decisions of the Eighth Circuit in *Hudspeth v. United States,* 471 F.2d 275 (1972), and the Second Circuit in *Kinsey v. Commissioner of Internal Revenue,* 477 F.2d 1058 (1973). The District Judge considered both of these decisions in his opinion in the present case and found them to be distinguishable. An examination of the two cases leads me to the same conclusion.

In *Hudspeth* the taxpayer owned 81.5% of the outstanding stock in a corporation and his two sons owned the remainder. After a plan of liquidation was adopted by the directors of the corporation, who consisted solely of members of the taxpayer's immediate family, he transferred some of his stock to exempt donees. After these gifts had been made the taxpayer continued to own 74.8% of the outstanding stock. Looking at the "realities and substance of the events" the court concluded that the taxpayer's continued control over the corporation after the gift of the stock was critical to its decision. It is clear from reading the *Hudspeth* opinion that the corporation was

---

**2.** As an additional reason for his decision, the district judge held, applying the *Hudspeth* rationale, that taxpayer did not control Buckeye Union Casualty Company.

**3.** Although we do not regard control of the corporation as pivotal, we observe that other

members of taxpayer's family were also substantial shareholders, and that her husband presided over the June 15, 1965 meeting of the board of directors at which the detailed arrangements for liquidation were approved.

nothing more than the *alter ego* of the taxpayer who controlled it before and after the charitable gifts.

In *Kinsey* the corporation which was being liquidated was also a closely held one. The taxpayer owned 74% of the outstanding stock and the remainder was owned by his wife and three employees, two of whom were directors. His gift of stock to De-Pauw University came not only after adoption of the plan of liquidation, but also after the corporation "had already made distributions in liquidation of a major portion of its assets, and had taken steps to dispose of the rest." 477 F.2d at 1059.

In the present case the taxpayer owned less than ten percent of the outstanding stock in the corporation at the time the plan of liquidation was adopted. Though her husband and children owned substantial interests, the corporation had 694 shareholders and a majority of the stock was owned by persons who were not related to the taxpayer or her husband. Plans of liquidation and dissolution were adopted by the shareholders on February 15, 1965. Taxpayer made gifts of stock to tax exempt donees on June 17, 1965 before any distribution in liquidation had been made.

It is apparent that the decisive factor in *Hudspeth v. United States, supra,* is not present in this case. The taxpayer never had control of the corporation, either before or after the plan of liquidation was adopted. If for any reason it had been determined that the decision to liquidate was imprudent neither she nor the donees would have had the power to prevent a reversal of that decision. The total domination of a closely held corporation by the donor taxpayer who had committed himself to a plan of liquidation presented to the *Hudspeth* court a case with "realities and substance" that are not present in this case.

While the donor taxpayer in *Kinsey v. Commissioner of Internal Revenue, supra,* did not continue to have sufficient stock to dictate the course of events after he had made a gift of stock, that case is distinguishable from the present one because of the fact that a major portion of the assets had been distributed in liquidation prior to the date of the gift. As a practical matter this made the decision to liquidate irreversible. The donor taxpayer, who continued to hold more than 50% of the stock during liquidation, would have suffered adverse tax consequences if the plan of liquidation had been abandoned because the distributions he had already received when he made the gifts of stock would be taxed as ordinary income. Again the realities of events led the court to conclude that the possibility of reversing the decision to liquidate was so remote as to be non-existent. In the present case, however, though a plan of complete liquidation had been adopted, no distributions occurred until more than three months after the gifts to the charitable organizations were made.

The court should not adopt a *per se* rule that a gift of stock of a corporation in the process of liquidation will always be treated as an anticipatory assignment of income. This is the effect of the majority opinion, however, because it is difficult to imagine a case with facts more favorable to the claim of a taxpayer than the present one.

The taxpayer had made other gifts of stock of this corporation in years prior to the one in which the liquidation and dissolution were voted. The gifts which came after the plan of liquidation had been voted did not result from a "one-shot" tax avoidance scheme designed to take advantage of the liquidation. The taxpayer testified that she believed that the gifts of stock she made after the plan was adopted were no different for tax purposes than the ones made before. The charitable donees were actual stockholders after the gifts were made, receiving notices of meetings and voting by proxy on issues which arose before the final dissolution of the corporation. The gifts did not involve stock in a closely held family corporation. Though her husband was president and the owner of 19% of the outstanding stock, none of the gift stock had come to the taxpayer from her husband. She and her husband filed sepa-

rate income tax returns and taxpayer testified that her husband did not advise her with respect to the liquidation or gift of stock.

The district court properly applied the rule of this circuit as stated in *Jacobs v. United States*, 280 F.Supp. 437 (S.D.Ohio 1966), *aff'd*, 390 F.2d 877 (6th Cir. 1968), and I would affirm the judgment.

PHILLIPS, Chief Judge, and JOHN W. PECK, Circuit Judge, concur.